# SUPREME COURT,

## STATE OF KANSAS.

## JULY TERM, 1883.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. DAVID J. BREWER,

Joseph Brown, *as Administrator of the Estate of William Haas, Deceased,* v. The Atchison, Topeka & Santa Fé Railroad Company.

1. Negligence *of Railroad Company, Evidence Tending to Prove.* A portion of the evidence introduced on the trial, tended to show that the plaintiff's intestate, who was a yard switchman in the employ of the defendant railroad company, and whose duty it was to couple cars, and who was a new man in the yard, and had but little knowledge of the same, while attempting to couple a flat car, loaded with projecting bridge timbers, and a box car, properly went in between them to couple them, and stepped into a ditch made by the railroad company, of which ditch he did not have previous knowledge, and slipped, and in recovering himself so raised his head that it came between the projecting timbers and the box car, and was so crushed that he immediately died. *Held,* That such evidence tended to show negligence on the part of the railroad company, and did not necessarily show negligence on the part of the plaintiff's intestate.

2. Demurrer *to Evidence, to be Overruled, When.* Where the defendant in a case which is being tried by a jury, files a demurrer to the plaintiff's evidence, on the ground that the evidence does not prove any cause of action, *held,* that unless the plaintiff has utterly failed by all his evidence to prove his case, or some material fact in issue in the case, the demurrer should be overruled.

| 31 | 1 |
| 42 | 688 |
| 31 | 1 |
| 43 | 180 |
| 31 | 1 |
| 44 | 499 |
| 44 | 663 |
| 31 | 1 |
| 45 | 625 |
| 31 | 1 |
| 47 | 256 |
| 31 | 1 |
| 49 | 336 |
| 31 | 1 |
| 52 | 144 |
| 52 | 438 |
| 53 | 739 |
| 53 | 764 |
| 31 | 1 |
| 68 | 443 |
| 31 | 1 |
| 71 | 5 |
| 31 | 1 |
| 72 | 452 |
| 73 | 564 |
| 31 | 1 |
| 77 | 502 |
| 31 | 1 |
| 78 | 236 |

3. DEMURRER TO EVIDENCE, *Verdict by Jury—Nature of Each.* The decision of a case by the court upon a demurrer to the evidence, is entirely unlike either the decision of the case by a jury upon the evidence, or the decision of the case by the court upon a motion for a new trial; for where the court sustains a demurrer to the evidence, the court must be able to say that, admitting every fact that is proved which is favorable to the plaintiff, and admitting every fact that the jury might fairly and legally infer from the evidence favorable to the plaintiff, still, the plaintiff has utterly failed to make out some one or more of the material facts of his case; while all that is necessary for a jury to say in order to find a verdict against a plaintiff is, that although the plaintiff may have introduced an abundance of evidence to prove every material fact of his case, yet that it does not outweigh or does not preponderate over that which tends to prove the defendant's side of the case; and all that is necessary for the court to say, in order to sustain a motion for a new trial upon the ground that the verdict is against the evidence, is, that although there is plenty of evidence to sustain the verdict, yet that the evidence is conflicting, and the weight or preponderance of the evidence is clearly against the verdict.

*Error from Lyon District Court.*

AT the March Term, 1883, the defendant *Railroad Company* recovered a judgment against the plaintiff *Brown*, as administrator, etc., who brings the case here. The facts are stated in the opinion.

*Scott & Lynn*, and *W. N. Lowe*, for plaintiff in error:

In addition to our former briefs, we submit that the only question before the court on this demurrer, is whether there was any evidence to warrant a jury in finding for the plaintiff. This involves two propositions of law: First, did the evidence tend to show defendant was guilty of actionable negligence; and if so, then: Second, did the evidence show that the plaintiff's intestate was guilty of such contributory negligence as would prevent the plaintiff from recovering? The burden of proof was on the plaintiff to establish the first, and upon defendant the second proposition. Both these propositions were strictly questions of fact for the jury, and not of law for the court. As to the first proposition, see *U. P. Rly. Co. v. Rollins*, 5 Kas. 181; *C. B. U. P. Rld. Co. v. Hotham*, 22 id. 41. On the second proposition, see *U. P.*

*Rly. Co. v. Rollins*, 5 Kas. 181; *K. P. Rly. Co. v. Butts*, 7 id. 315; *Kelley v. C. M. & S. P. Rld. Co.*, 50 Wis. 384.

On the question of contributory negligence, see *Maultby v. City of Leavenworth*, 28 Kas. 747; *Corlett v. City of Leavenworth*, 27 id. 673; *Osage City v. Brown*, 27 id. 74.

In every one of these cases, the plaintiff had previous actual knowledge of the danger which caused the injury. But there is a grave doubt whether Haas knew or ought to have known of the dangers of the coupling. The evidence convinces us he did not; but for the argument, let us admit there is a question under the evidence, whether he did or did not know, or ought or ought not to have known, then we say it was a question for the jury to resolve the doubt. (*Huddleson v. Mfg. Co.*, 106 Mass. 286; *Porter v. Rld. Co.*, 60 Mo. 160; *Dale v. Rld. Co.*, 63 id. 455.)

No legal presumption can arise from the facts proved, that the decedent either knew, or ought to have known, of the dangers of this coupling. It was a fact to be found by the jury. (*Hough v. Rly. Co.*, 100 U. S. 231; *Murphy v. Phillips*, 35 L. T. [N. S.] 477; Wharton on Neg., §§ 2, 210.)

The court erred in sustaining objections to the questions propounded to O'Rourke, because he was a hostile witness whose testimony is full of contradictions. He was an utter surprise to the plaintiff, having contradicted and thrown doubt upon every material matter that he had before testified to in a deposition taken by plaintiff.

The court erred in refusing to allow the question put to Ferrin.

The court erred in refusing to allow the coroner to answer questions, for it shows that defendant was trying to destroy the evidence against it. This was admirable under the rule *in odium spoliatoris.*

*Geo. R. Peck*, *C. N. Sterry*, and *W. C. Campbell*, for defendant in error:

By a demurrer to the evidence, every fact which the jury could legally infer from the evidence is admitted, and it is

then the duty of the court to determine the case. (*Williams v. A. T. & S. F. Rld. Co.*, 22 Kas. 117; *U. P. Rly. Co. v. Rollins*, 5 id. 72; *K. P. Rly. Co. v. Butts*, 7 id. 308; *Boland v. M. R. Rld. Co.*, 36 Mo. 484; *L. S. & M. S. Rld. Co. v. Miller*, 25 Mich. 274.)   See also the well-considered case of *Nolan v. Shickle*, 3 Mo. App. 300, and the cases cited in the opinion.

As to the nature or amount of evidence necessary to justify the court in submitting the case to a jury, Williams, J., in *Toomly v. Rly. Co.*, 3 C. B. [N. S.] 148, says:

"It is not enough that there was some evidence; for every person who has had some experience in courts of justice knows very well that a case of this sort against a railway company could only be submitted to a jury with one result. A scintilla of evidence, or a mere surmise that there may have been negligence on the part of the defendants, clearly would not justify the judge in leaving the case to the jury. There must be evidence upon which they might reasonably and properly conclude that there was negligence." (Approved in 2 Thompson on Neg., p. 1237.)

Also, in *Corman v. E. E. Rly. Co.*, 4 H. & N. 781–4:

"Whether there is reasonable evidence to be left to the jury of negligence occasioning the injury complained of, is a question for the judge." (*Meb. Rly. Co. v. Jackson*, L. R., 3 App. Cas. 193–207, 208.)

"Scintilla of evidence not sufficient.   It is not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established." (*Jewell v. Parr*, 13 C. B. 916.)

"There must be evidence upon which the jury might reasonably and properly conclude that there was negligence.

"When the evidence is equally consistent with either view —with the existence or non-existence of negligence—it is not competent for the judge to leave the matter to the jury.   The party who affirms negligence has altogether failed to establish it.   That is a rule which ought never to be lost sight of." (*Cotton v. Wood*, 8 C. B. [N. S.] 568–573.)

"It is not sufficient objection to the action of the court in ordering a non-suit that there was some evidence from which negligence on the part of the defendants might have been inferred, unless there was evidence on which a jury might

reasonably and properly conclude there was negligence." (*Beaulieu v. Portland Co.*, 48 Me. 291.)

See also *L. S. & M. S. Rld. Co. v. Miller*, 25 Mich. 274.

"In an action by the administrator of a deceased person to recover damages for the negligence of defendants whereby the intestate was deprived of his life, to entitle plaintiff to recover it must appear affirmatively that the accident resulted wholly from the negligence of said defendant, and that the negligence and improvidence of intestate did not contribute to bring it about. The negligence of defendant must be made out and established by proof, and not be left to be inferred from circumstances." (*Lehman v. City of Brooklyn*, 29 Barb. 234.) •

That the burden of proving contributory negligence was on the defendant, is true where there is a conflict in the testimony; but if plaintiff's own undisputed evidence shows contributory negligence, there is then no fact for the jury to determine, and the court decides the question. (*Davis v. D. & M. Rld. Co.*, 20 Mich. 127; *Dublin Rly. v. Slatterly*, L. R., 3 App. Cases, 1196–7; *Skelton v. L. & N. Rld.*, L. R., 2 C. P., 631–5.)

We may easily admit that the *burden* of proof as to negligence is where the plaintiff has put it in his brief, where there is a conflict in the testimony. But it is certainly not true that it is a question of fact for the jury and not of law for the court: First, whether the evidence tends to show defendant was guilty of actionable negligence; or second, whether the evidence (where it is not conflicting or disputed) shows plaintiff's intestate was guilty of such contributory negligence as would prevent the plaintiff from recovering.

The question of knowledge, or opportunity for knowledge, of the condition of the place he was to work in, and the things he was to work with, is more to the effect that he had assumed the risk of dangers incident to such condition of things, and amounts to a waiver of a safer mode. And again, his knowledge of this condition of things is one of the elements, which with other admitted facts the court must take into considera-

tion in determining whether there has been such *contributory* negligence on the part of the deceased as will prevent a recovery against the defendant.

"But if plaintiff's own testimony in support of his cause of action raises a presumption of such contributory negligence, the burden rests upon him to remove that presumption." (*B. & O. Rld. v. Whitacre*, 35 Ohio St. 627.) Or, if it may be fairly inferred from all the circumstances. (*B. & O. Rld. v. Whittington*, 30 Gratt. 805–9; *N. J. Express Co. v. Nichols*, 33 N. J. L. 438; *Waters v. Wing*, 59 Pa. St. 211; *Gallpin v. C. & N. Rld.*, 19 Wis. 604; *C. P. Rld. Co. v. Rowan*, 66 Pa. St. 393. See also *Lewis v. B. & O. Rld. Co.*, 38 Md. 588; *C. C. Rld. Co. v. Holmes*, 5 Col. 197.)

1. Was sufficient evidence adduced at the trial below to hold defendant liable, without regard to the question of contributory negligence on the part of plaintiff's intestate?

Wherein has defendant violated any duty that it owed to plaintiff's intestate? What act or omission on its part has been wrongful? Plaintiff's counsel insist that it was, principally, in furnishing him with an unsafe and dangerous place in which to work. The determination of this question turns upon the duty which defendant owed plaintiff's intestate as one of its employés. We assert that the rule is now well established that a servant, by accepting or remaining in an employment, assumes the risks and perils incident thereto, so far as they are apparent and obvious. This rule was first laid down in the leading case of *Priestly v. Fowler*, 3 M. & W. 1, and has been recognized as the law ever since. (Wood on Master and Servant, § 326. See also 16 Ad. & E. 326; 81 N. Y. 265; 60 id. 607; 25 Kas. 35, 188; 2 Am. & Eng. Rld. Cases, 158; 74 Ind. 140; 92 Pa. St. 276; 42 N. H. 241; 119 Mass. 412; 1 Lans. 108; 55 Ga. 133; 58 id. 485; 72 Ill. 138, 256; 77 id. 365; 84 id. 429; 88 id. 112; 90 id. 133; 92 id. 43; 61 id. 130; 33 Mich. 133; 20 Minn. 90; 9 Bush, 81; 47 Miss. 404; 50 id. 178; 3 Dill. 320. And also see *Ladd v. Rld. Co.*, 119 Mass. 413; 3 M. & W. 1; 9 Exch. 223; 16 Q. B.

326; *Hard v. Rld. Co.*, 32 Vt. 473; *Meyer v. Rld. Co.*, 2 Neb. 341; *Rly. Co. v. Smithson*, 43 Mich. 212; *Perigo v. Rld. Co.*, 52 Iowa, 11; *Wells v. Rld. Co.*, 56 id. 520.)

While Haas worked in this new yard, he will be deemed, under the evidence, to have known that it was a new and uncompleted yard, which was constantly undergoing change, and that while it would be finally completed, yet that up to the point of its completion a change would constantly be going on, in which the yard would be graded, drained, and side-tracks built and completed, etc. Hence he took and assumed every risk which there was growing out of the condition of that yard, and the changes liable to be made therein from time to time. (30 Mo. 115; 62 id. 232; 63 id. 455; 50 id. 305; 61 id. 520; 69 id. 32; 29 Conn. 548; 10 Ind. 554; 22 id. 27; 39 N. Y. 468; 63 id. 449; 49 id. 521; 125 Mass. 79; 113 id. 396; 119 id. 412; 20 Mich. 105; 33 id. 133; 42 Wis. 598; 50 id. 462; 42 N. H. 240; 32 Vt. 473; 88 Ill. 112; 31 Cal. 376; 5 Ohio St. 541; 2 Am. & Eng. Rld. Cases, 144.)

See cases as to liability of master to servant, distinguished in note to *McGinnis v. Canada Southern Bridge Co.*, 8 Am. & Eng. Rld. Cases, pp. 140, 141, where if the master furnishes improper appliances, or fails to make needed repairs or changes, or otherwise renders the service needlessly perilous, his negligence is deemed waived by servant continuing in the employment without protest or promise of amendment by the employer. Also, see *McGlynn v. Bodie*, 31 Cal. 376; *Davis v. Rld. Co.*, 20 Mich. 127.

Haas as a matter of law assumed all the *ordinary* risks of his employment as yard switchman in the new and uncompleted yard, whether he knew, or might have known by reasonable and ordinary inspection thereof, or not, as the law conclusively presumes that he does know of and assume such *ordinary* risks, whether as a matter of fact he did know of them, or not; and, in addition thereto, he assumes all *extraordinary* risks of his employment under circumstances of extra danger, provided he knew of such extraordinary risks,

or might have ascertained the same by a reasonable and ordinary inspection thereof.

The true doctrine is, that Haas assumed all *ordinary* risks of his employment in a new and uncompleted yard, and all *extraordinary* risks of which he had knowledge, or by the reasonable exercise of his faculties could have obtained knowledge. (4 Am. & Eng. Rld. Cases, 636; 5 id. 474; 40 Iowa, 341; 39 id. 615; 32 id. 357; 3 Dill. 320; 113 Mass. 396; 88 Ill. 112; 66 Mo. 239; 25 Kas. 188; 45 Mich. 212; 42 id. 523.)

Where the servant has equal knowledge with the master, of the danger incident to the work, he takes the risk upon himself. (60 Mo. 160; 41 Md. 298; 46 Cal. 409; 25 Ala. 659; 113 Mass. 398; 30 Wis. 674; 50 id. 462; 54 id. 257–269; 61 Mo. 520; 20 Mich. 113; 3 Mo. App. 300; 29 Conn. 548; 61 Ill. 162; 8 Wright, 175; 13 id. 60; 1 Coldw. 612.)

2. Does the evidence show such contributory negligence on the part of plaintiff's intestate as will prevent a recovery?

Now, conceding all the negligence claimed by plaintiff on the part of the defendant, and even then we say that Haas was guilty, upon uncontradicted facts, of such negligence that the court was justified in taking the case from the jury on a demurrer to the evidence. It was the height of negligence to step in between those cars when they were only seven or eight feet apart. The coupling could not possibly have been made in safety by him, standing or stepping between the cars, unless, instead of stooping, he had squatted down clear of all timbers. His contributory negligence appearing, by undisputed testimony, it was clearly proper for the court below to rule that he could not recover. (25 Mich. 274; 26 id. 255; 35 id. 468; 40 id. 247; 10 Allen, 532; 116 Mass. 269; 52 Cal. 45; 49 id. 253; 90 Ill. 586; 78 id. 88; 95 U. S. 697; 46 Wis. 259, 404; 9 Vroom, 525; 42 N. J. Law, 180; 21 Minn. 293; 22 id. 165; 85 Pa. St. 293; 56 N. Y. 302.)

The following cases are, as we think, analogous to the case

at bar, as to the questions of fact, and as to the law asserted by them: *C. Rld. Co. v. Ward,* 61 Ill. 130; *Rld. Co. v. Flannigan,* 77 Ill. 365; *Rld. Co. v. Monroe,* 85 Ill. 25; *Rld. Co. v. Black,* 88 Ill. 112; *Muldowney v. Rld. Co.,* 39 Iowa, 615; the leading case of *Williams v. Rld. Co.,* 43 Iowa, 396; *F. W. Rld. Co. v. Guildersleave,* 33 Mich. 133; *Hulett v. Rld. Co.,* 67 Mo. 239; *Walney v. Rld. Co.,* 33 Ohio St. 227.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Joseph Brown, as administrator of the estate of William Haas, deceased, against the Atchison, Topeka & Santa Fé railroad company, to recover damages alleged to have resulted from the negligence of the defendant in wrongfully causing the death of the deceased. The action was brought under § 422 of the civil code, to recover damages for the benefit of the next of kin to the deceased.

This is the third time that the case has been to this court. (*A. T. & S. F. Rld. Co. v. Brown,* 26 Kas. 443; same case, 6 Am. & Eng. Rld. Cases, 228; *Brown v. A. T. & S. F. Rld. Co.,* 29 Kas. 186; same case, 10 Am. & Eng. Rld. Cases, 739.) After the last decision by this court, the case was again tried in the district court, before the court and a jury, with the following result: After the plaintiff introduced his evidence and rested, the defendant demurred to the evidence on the ground that no cause of action had been proved; and the district court sustained the demurrer, and rendered judgment in favor of the defendant and against the plaintiff for costs; and the plaintiff again brings the case to this court for review.

Among the admitted facts, are the following: On November 17, 1879, the defendant railroad company owned and operated a car-yard immediately east of the city of Emporia, and another immediately west of that city. Haas, the deceased, had been in the employ of the railroad company for some time prior to his death, which occurred on November 17, 1879. He was first employed at the yard east of the city, and afterward, and up to the time of his death, at the

yard west of the city.   The yard west of the city was new, not fully completed, and not in very good condition; and, on account of the rains which occurred just prior to November 17, 1879, it was in a still worse condition than it would have been if no rain had occurred.   The railroad company was continuously making improvements and changes in this yard, for the purpose of bettering its condition.   This yard contained several railroad tracks, all running in an easterly and westerly direction.   The south track had not yet been fully surfaced, though some dirt had been thrown on the track between the cross-ties.   A flat car belonging to the Hannibal & St. Jo. railroad company was standing on this track.   It was loaded with bridge timbers, which projected over the east end of the car.   It was desired to couple a box car to this car.   The box car belonged to the defendant.   The engineer having control of the switch engine moved this box car upon the south track, and within about two hundred or three hundred feet east of the flat car, and then gave it a "kick" with the engine, propelling it westwardly toward the flat car, and it passed on, by reason of the momentum given it by the engine, toward the flat car, unaccompanied by the engine or by any brakeman or other person in charge.   Haas was then in the employ of the railroad company, as yard switchman, at this new yard, and it was his duty, among other things, to couple cars.   He was a young man, about twenty-five years of age, six feet high, in vigorous health, competent for the place, and had had considerable experience as brakeman and switchman on railroads and in coupling cars.   Haas stood on the north side of this track, and about thirty or forty feet east of the flat car, and had a coupling-stick in his hand, about three feet long.   When he saw the box car coming, he moved westwardly toward the flat car, and when the two cars were within four or five feet of each other, he stepped in between them for the purpose of coupling them.   The box car moved on toward the flat car, struck the top of Haas's head, which was then between the box car and the projecting timbers on the flat car, and so crushed his head that he imme-

diately died. This occurred about 3 o'clock in the afternoon of November 17, 1879. The day was clear, and the sun was shining at the time.

The plaintiff claims that the following, among other facts, were also proved: Haas had been in the employ of the railroad company at these two yards only about seventeen days, and had been at the new yard only about three or four days prior to his death, and had but little knowledge of the situation or the condition of the yard. The south track was in a worse condition than any of the others. The previous rains had caused water to stand in the yard in places, and some three or four days prior to the accident a ditch was dug by the employés of the railroad company across this south track, to permit the water which had accumulated and was standing on the north side of the track to pass through to the south side of the track, so that it might run off. This ditch was about the same length as the cross-ties, was about fifteen inches deep and about the same width. The aforementioned flat car was so situated on the track that the east ends of the projecting timbers were immediately over the ditch. These timbers projected over the end of the flat car from eighteen inches to two feet. Although the ditch was not covered in any manner, and the sun was shining, yet the car stood in such a position that it cast a shadow upon the ditch, and so obscured it that it could not readily or easily be seen. Haas did not have any previous knowledge of the ditch, or of the flat car, or of the projecting timbers. The ditch had no water in it at that time, but it was muddy and slippery. It is usual, when railroad companies dig ditches in their car-yards, to put in drain-boxes, or to cover them in some other proper manner. The drawhead on the flat car was a single drawhead, while that on the box car was a double drawhead; and the drawhead on the flat car was lower than that on the box car. Because of the projecting timbers and the difference in the height and shape of the drawheads, it would have been difficult, if not impossible, for Haas to have coupled the cars except by going in between

them; and probably he could not have coupled them in any other manner. Besides, it is not customary to couple cars in any other manner, and Haas went in between the cars in the manner in which he should have gone in to couple them. When Haas went in between the cars to couple them, he stooped down, but stepping into the ditch with his right foot he slipped, and then, stepping with his left foot upon a higher place, raised his head to such a height that it was caught between the projecting timbers on the flat car and the box car, and was so crushed that he immediately died. The plaintiff claims that except for the ditch, Haas would not have been injured. The plaintiff also claims that except for the projecting timbers, Haas would not have been injured. The box car, after it was set in motion by the switch engine, moved at the rate of six or seven miles per hour. At the time of the accident, the railroad company was so crowded with business that the yardmen in that yard had to perform their labors in making up trains and attending to their other duties in a great hurry.

The defendant claims that, besides the admitted facts, the following facts were proved: Although Haas had been in the employ of the railroad company at the old yard for some time previous to his employment at the new yard, yet he had been in the company's employment at the new yard for about seventeen days prior to the accident which caused his death; and he accepted the employment at the new yard because of an increase in his wages, well knowing the situation and condition of the new yard. He had on other days, and indeed every day for seventeen days immediately prior to the said accident, coupled other cars on said south track, and must have known the exact situation and condition of the ditch and all its surroundings. The ditch was at all times in plain sight, and no one could have gone near it without seeing it. Besides, it was not so deep as claimed by the plaintiff, and was not situated immediately under the east ends of the projecting timbers, as the plaintiff claims; nor was it situated where the accident occurred; nor did the deceased step into

it; and it had nothing to do with the accident, or with caus-
ing the death of the deceased. The flat car and the project-
ing timbers were also in plain view, so that if anyone had
even glanced toward them he must have seen them and known
their condition. The deceased was expert in his business,
capable of taking care of himself; and no person was in
charge of the coupling of the cars except himself. The dif-
ference between the height of the drawheads on the two cars
was scarcely appreciable, and Haas could have gone in be-
tween the cars and coupled the same without any danger to
himself, if he had merely squatted down, with one foot inside
of the rails and the other extending backward outside of the
rails, instead of stooping over, as he did. He could also
have coupled the cars with perfect safety to himself by re-
maining outside of the track, and using the coupling-stick
which he at the time held in his hand. The box car did not
move faster than a man could walk. Cars with projecting
timbers, like the said flat car, were frequently received in
that yard about that time, and were coupled and uncoupled
with safety, and Haas had full knowledge of these facts. The
defendant also claims that the reason why it commenced op-
erations in the new yard before it was finished was because
the old yard was overcrowded with business.

We think the preponderance of the evidence as introduced
on the trial comes nearer proving the facts as claimed by
the defendant than as claimed by the plaintiff; and if the
court below had been trying the case upon the evidence,
without the jury, its decision upon the evidence would be cor-
rect. Upon a preponderance of the evidence, we think the
findings and judgment in the present case should be in favor
of the defendant and against the plaintiff. But the case was
not submitted to the court below upon a preponderance of
the evidence. The question as presented to that court was
simply whether the plaintiff had introduced some evidence
to prove every material fact of his case, or had utterly failed
to prove his case. Now while we think the preponderance
of the evidence was in favor of the defendant and against the

plaintiff, yet we cannot say that the plaintiff did not introduce sufficient evidence to prove his case, provided no conflicting or countervailing evidence had been introduced, tending to prove the other side of the case.  We think there was some evidence introduced tending to prove all the material facts of the plaintiff's case, and some evidence to prove all of the facts as they are claimed to have been proved by the plaintiff; and when we say *some* evidence, we do not mean that there was merely a bare *scintilla* of evidence, but we mean that there was an amount of evidence worthy of consideration, and an amount of evidence that would have entitled the plaintiff to a verdict in his favor if all the contradictory and conflicting evidence should not be considered or should not be believed by the jury.

Ordinarily, a railroad company is bound to exercise reasonable care and diligence in furnishing its employés with a reasonably safe place at which to perform their labors, and with reasonably safe implements, tools or machinery with which to work; and if the railroad company fails in this, it is negligent, and for any injuries resulting from such negligence it is liable.  It is probable in the present case, that with the amount of business which the railroad company had on hand, it was necessary to commence using the new yard before it was entirely completed or finished; and therefore that it would be excusable for any defects in the new yard, provided its employés had full knowledge of such defects and were warned against them.  And under such circumstances the railroad company would not be negligent, and the employés continuing in the service of the company would, as in other cases, take all the risks and hazards connected with their employment; and then if they should go into danger with their eyes open and knowing the risks, it would be their own fault and not that of the railroad company if they received injuries. Under such circumstances they would themselves be guilty of negligence, and could not recover from the railroad company.

But in the present case, we cannot say as a matter of law that Haas, the deceased, had any previous knowledge of the

existence of this ditch. There is no evidence that clearly and conclusively shows that he had. Under the evidence, he may not have had any such knowledge. It does not appear that he was ever near the ditch, or that he even looked toward the same, prior to the accident. It would seem from the evidence, or at least a part of it, that he had his eyes turned toward the moving car, and not toward the ditch, during the whole of the time while he was intending, expecting and preparing to couple the cars. Of course if he had known of the existence of the ditch, and of its condition, previous to the accident, and had then walked into it, as some of the evidence seems to show, he would have been guilty of such culpable negligence that his administrator, the present plaintiff, could not recover in this action. But, as we have before stated, the evidence does not show that he had · any previous knowledge of the existence of the ditch; and without knowledge he would have had the right to assume that no such dangerous place existed in the yard. As before intimated, all employés have a right to assume that their employers will furnish them with a reasonably safe place at which to exercise their employment.

With these views, it follows that the court below erred in sustaining the demurrer to the evidence. If the evidence had been submitted to the jury, the jury should have found just as the court did; but the jury would have made their finding upon the preponderance of the evidence. But the court, upon a demurrer to the evidence, does not decide the case upon a bare preponderance of the evidence. It must be able to say before it sustains the demurrer that, admitting all the evidence to be true which the plaintiff has introduced, and that none of the evidence conflicting therewith is true, the plaintiff has utterly failed to make out his case. If the court below had overruled the demurrer and allowed the jury to decide the case, and if the jury had then decided it in favor of the plaintiff and against the defendant, and the court had then granted a new trial upon the ground that the verdict was not sustained by sufficient evidence, such a de-

cision would be right, and this court would undoubtedly sustain the decision. (*Cunningham v. Chicago &c. Rld. Co.*, 17 Fed. Rep. 882.) But the decision of a case by the court upon a demurrer to the evidence is entirely unlike either the decision of the case by a jury upon the evidence, or the decision of the case by the court upon a motion for a new trial; for where the court sustains a demurrer to the evidence the court must be able to say that, admitting every fact that is proved which is favorable to the plaintiff, and admitting every fact that the jury might fairly and legally infer from the evidence favorable to the plaintiff, still the plaintiff has utterly failed to make out some one or more of the material facts of his case; while all that is necessary for a jury to say in order to find a verdict against a plaintiff is, that although the plaintiff may have introduced an abundance of evidence to prove every material fact of his case, yet that it does not outweigh or does not preponderate over that which tends to prove the defendant's side of the case. And all that is necessary for the court to say in order to sustain a motion for a new trial upon the ground that the verdict is against the evidence is, that although there is plenty of evidence to sustain the verdict, yet that the evidence is conflicting and the weight or preponderance of the evidence is clearly against the verdict. A new trial may be granted upon evidence that would not authorize the sustaining of a demurrer to the evidence. And this is right, for a new trial gives the parties another opportunity to make out a good case; but a decision sustaining a demurrer to the evidence is final.

We think the demurrer to the evidence was erroneously sustained in the present case. The present case, however, is a close one, and different minds might fairly come to different conclusions; yet we think there was sufficient evidence introduced on the trial by the plaintiff from which, if it had been wholly uncontradicted, the jury might have inferred negligence on the part of the defendant, and no contributory negligence on the part of the plaintiff, and might therefore have inferred that the plaintiff was entitled to recover.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.