## KATE FLETCHER v. THE CITY OF ELLSWORTH.

1. CITY—*Cellar Way in Alley—Bodily Injury—Liability.* Where there is a cellar way or opening 17 feet and 5 inches in length, and 9 feet and 6 inches in depth, on the side of a building adjoining an alley open for public travel, and such cellar way or opening is all located on and in the alley, and not on a lot or private ground, and has no railing, guard or other protection around it, and a person walking in the alley, upon a dark night, falls therein, without any negligence upon his part, *held*, that the city is liable for the injuries sustained thereby.

2. EVIDENCE—*Contributory Negligence—Jury.* The evidence in this case examined, and *held*, that it cannot be said, as a matter of law, upon the facts disclosed, that the plaintiff was guilty of such contributory negligence as to prevent any recovery. *Held, further,* That there was sufficient evidence introduced upon the trial in support of the cause of action alleged by the plaintiff to go to the jury.

*Error from Ellsworth District Court.*

ON the 7th day of June, 1889, *Kate Fletcher* brought her action against the *City of Ellsworth* to recover $10,000 damages for injuries by her sustained from falling, in the night of the 9th of November, 1888, into a cellar way or opening, which was located in an alley in Ellsworth, on the west side of a building known as the "Masonic temple." On November 9, 1888, there was a ball or party at the Masonic temple, and a Mrs. Lincoln was hired to do some work at the party. She asked Mrs. Fletcher if she would go with her and help. A trial was had at the January term, 1890, before the court, with a jury. A verdict was rendered by the jury for the plaintiff for $3,800. Upon a motion filed by the defendant, a new trial was granted. The second trial commenced on the 7th of April, 1890, before the court, with a jury. It was stipulated upon the trial, among other things, that

"There was, at the time of the injury to plaintiff, and still is, an alley on the west side of the Masonic temple; that the alley extends northerly and southerly, and connects with First street at the north; that the cellar way or opening, in which the alleged injury occurred, is on the west side of the temple,

and is located wholly on and in the alley; that the cellar way or opening is surrounded by a level stone curbing, 18 inches in width, the front of which is on a level with the sidewalk in front of the temple; that the cellar way or opening is 9 feet and 6 inches deep, and 17 feet and 5 inches in length, outside measurement; that the elevation of the coping around the cellar way above the rest of the ground in the alley was from $2\frac{1}{2}$ to $5\frac{3}{4}$ inches; that the alley and First street were, prior to the injury complained of, duly established, platted, and dedicated, and accepted as an alley and a public highway of the city of Ellsworth, the same as any other alley in the city; that, at the time of the injury, the sidewalk extended in front of the temple, and along in front of the alley, the boards in the sidewalk in front of the alley being laid lengthwise for teams to pass and repass. It is further stipulated and agreed, that block 29 is located in the city of Ellsworth, Ellsworth county, and that the city of Ellsworth was, at the time of the injury complained of, a duly incorporated and existing city of the third class, and having more than 600 people. It is further admitted, that the claim of plaintiff was duly presented for payment to the city council, and that the city refused to pay the claim, in whole or in part."

The temple was built in 1887, and was open for use about a year before the injury complained of. The building stands flush with the east side of the alley. The cellar way on the west side of the temple where the injury occurred was intended to be used as an entrance to a basement, but the basement has never been finished or used, and the basement entrance or stairway has never been used for passage or repassage since the construction of the temple. Valentine Hank, among other things, testified as follows:

"Ques. I will ask you if you are acquainted with the cellar way on the west side of the Masonic temple? Ans. Yes, sir.

"Q. Was that there at the time of the party I have asked you about? A. Yes, sir.

"Q. What was its condition at that time, with reference to its being open? A. It was open.

"Q. What was its condition, with reference to guards around it? A. There were none.

"Q. How long had you been janitor at this time? A. From the opening of the building; it was a little before Christmas; the opening was the 19th of December before, when it was opened first; I had been there a few days before that.

"Q. In what condition was this cellar way in the alley during all the time, with reference to being open or covered? A. There was no guard to it; it was open.

"Q. Was there any sidewalk at that time in front of the Masonic temple building? A. Yes, sir; eight-foot sidewalk.

"Q. The same sidewalk that is there now? A. Yes, sir.

"Q. Had that sidewalk been removed or taken away in any way? A. Not to my knowledge.

"Q. How is that sidewalk adjoining the cellar way and in front, with reference to being on the same level? A. It is the same level with the sidewalk.

"Q. You may state whether or not, in passing from the sidewalk in front of the Masonic temple to the cellar way, there is anything to cause you to know when you are off the sidewalk and on the alley or stone which is around the cellar way by elevation or depression. A. There is no depression, but the stone runs up on a line with the building, and there is a stone which goes around the cellar way, 18 inches wide, on a level with the sidewalk.

"Q. The sidewalk runs on a line with the building, 18 inches wide on the side, and from the street to the cellar way, and there is no perceptible difference in the height of this stone and the sidewalk? A. I do n't think there is.

"Q. And you say it has been unprotected in any manner since Christmas the year before? A. Yes, sir.

"Q. And you have been janitor during all that time? A. Yes, sir.

"Q. For what purpose was this opening Mr. Lloyd has spoken of, used as a cellar way? A. It was for the purpose of going down under the Masonic building, which leads to the cellar, and also a room which was to be fixed up for some purpose. It has windows and everything complete in it.

"Q. How did you get down this cellar way? A. Regular steps.

"Q. Do you know how many? A. I could not tell. Probably 10, between 8 and 10; somewhere in that neighborhood. I have walked it many a time."

Ira E. Lloyd testified:

"In February, 1888, I occupied rooms in a bank building, on lot 14, in the city of Ellsworth. There is a rear stairway to the building, which comes down into this alley. From the time I occupied my rooms up above the bank, I would frequently pass, in going home and towards the courthouse, through this alley, and up through the alley by the Masonic temple. In walking, I invariably went along this alley west of the Masonic temple, and there is a commonly traveled path close to that curbing and within six inches of it. Sometimes I would walk along up that place, and sometimes I would walk on the curbing. I lived northeast from the Masonic temple. In going to my office, when it was over the bank, I would frequently come down this street [indicating First street], and turn at this corner [indicating the corner of Masonic temple next to cellar way], and in turning I would invariably walk on that curbing. I have probably done that 50 or 100 times. I have done it 25 or 30 times prior to this accident. That was the way for passengers on foot along the west side of that curbing, and I have frequently seen them walking along there in the daytime, and frequently in the evening have seen people turn and walk in this direction [south] on the curbing."

Mrs. Fletcher testified:

"That she was 43 years of age, and resided in Ellsworth; that she went to the Masonic temple on the night in question to help Mrs. Lincoln.

"Q. Please state what, if anything, occurred to you after you went to the Masonic temple at the time spoken of. A. Sometime in the night after I went there, between 10 and 11 o'clock, Mrs. Lincoln asked me to go out with her and empty a pail of swill. I went out with her—the north door, down the sidewalk a piece. She stepped into the alley, and I stood on the sidewalk, and I heard a footstep coming along the sidewalk towards me. I stepped back a few steps. The footsteps still came on, and I stepped into the alley. I looked around to see where I would stand, and saw nothing. I stepped back a few steps carefully, and fell into that hole.

"Q. What was the nature or character of the surface of the ground over which you stepped? A. It appeared all even to me—no inequality in it.

"Q. At the time, did you know of any hole being at that place? A. No, sir."

She further testified that the night was very dark; that she had good eyesight; that she could not see the sidewalk on the occasion of the injury; that she heard footsteps approaching in a westerly direction, and she looked to see if anyone was coming, and could see nothing; that she could not see the sidewalk; that she could not see in the alley at all. She testified that she knew there was an alley or street running along the west side of the Masonic temple, as she had observed wagon tracks down that way, and that the boards ran lengthwise there, instead of crosswise. She testified also that she never saw the cellar way before she fell into it, nor since her fall. She also testified on cross-examination:

"Ques. Which way, when you stepped off the sidewalk, on the occasion of your injury, into this alley, were you looking? Ans. It was along in the street before me.

"Q. Which direction was that? A. It was south. There were no lights shining through the windows of the temple building across the alley at that time. If there had been lights, I would have seen them.

"Q Where were you standing, in reference to the traveled portion of the alley, when you looked around to see where you could step? A. About the middle of the alley.

"Q. How far were you at that time from the sidewalk? A. I don't know; a few steps; I can't really know.

"Q. What did you next do? A. The next I did was to fall into the hole, I guess.

"Q. How did you go from the place where you were standing to the hole? A. I stepped back two or three little steps carefully to stand there until the lady should come in that I was waiting on. I was facing west, I guess.

"Q. Did you walk forward or backward? A. I stepped a little just carefully backward to stand there until this lady should come in I was waiting for.

"Q. What do you mean by the use of the word 'carefully,' as you were stepping back; describe the manner of your stepping? A. I was careful.

"Q. Why didn't you remain standing on the sidewalk? A. Well, I just stepped aside to let that man pass that was going on. I did not know whether it was a man or woman.

"Q. Before you stepped into the hole, you tell us you stepped from the sidewalk and a few steps into the alley, and

then you stepped back two or three little steps and fell into the hole; why could you not have remained standing at this place in the alley where you were before you moved back towards the building? A. I looked around to see where I could step, and I stepped this far, thinking I could stand there till she come on.

"Q. Was there anything in the way of your standing there in the alley as you then stood before you moved back to the building? A. Nothing that I remember.

"Q. Then why could you not have remained standing right there, and not moved back towards the building? A. Well, I went just to see whether I could hear her coming. I wanted to try to face the way I thought she was; that was the reason of it.

"Q. What did you step on after you left the sidewalk; what substance? A. Well, it appeared to me to be the alley.

"Q. What substance; boards, dirt, or stone? A. It was not boards anyway.

"Q. Was it dirt? A. It appeared hard under my feet; I can't say quite what it was.

"Q. About how many steps did you take from the point where you were in the alley towards the building until you fell into the hole? A. They were small, little steps. I just moved carefully back small, little steps.

"Q. When you stepped from the sidewalk into the alley, did you intend to step off the sidewalk? A. I intended to step off and wait for Mrs. Lincoln, and to wait there till she came in.

"Q. Did you leave the alley, the traveled portion of the alley, when you first stepped into the alley and moved back towards the Masonic temple for the purpose of avoiding being seen by the person whose footsteps you heard approaching? A. It was to wait on Mrs. Lincoln."

After the introduction of all of the testimony, except Mrs. Fletcher's, the court sustained a demurrer thereto. Then the court permitted the plaintiff to reopen her case, and her deposition was introduced. Thereupon the defendant again interposed a demurrer to the evidence, which was overruled, and the defendant excepted thereto. The defendant then introduced the testimony of several witnesses. The court at that time again sustained a demurrer to the evidence. The

court, in sustaining the demurrer to the evidence, used the following language:

"Having duly considered all of the evidence introduced by the defendant and the plaintiff, it sustains the demurrer to the evidence interposed by the defendant, on the ground that the evidence clearly shows to the satisfaction of the court that the plaintiff has been guilty of such contributory negligence as will prevent her recovery herein, as shown by the evidence introduced on her behalf."

The plaintiff excepted to the ruling of the court, and brings the case here.

*Ira E. Lloyd,* for plaintiff in error:

1. It devolved upon the defendant to prove contributory negligence, if any, on the part of the plaintiff. *City of Atchison v. Langan,* 35 Kas. 318; 14 id. 38 ; 9 id. 620; 25 id. 582. The burden of proof as to contributory negligence is not shifted by plaintiff introducing evidence tending to show contributory negligence, and the burden of proof is upon defendant to establish contributory negligence by a preponderance of the evidence. *Randal v. Telegraph Co.,* 34 Wis. 140; *Gordon v. City of Richmond,* 83 Va. 436; *Mo. Pac. Rly. Co. v. Neiswanger,* 41 Kas. 621.

2. To authorize the court to take the case from the jury, the evidence of plaintiff should be such that reasonable minds would draw no other inference or conclusion from it than that the plaintiff was at fault. See Beach, Cont. Neg., 1st ed., § 162, and cases there cited. See, also, Field, Dam. 519; *Detroit Rld. Co. v. Van Steinberg,* 17 Mich. 99–120; *Welsh v. Oregon Rld. Co.,* 10 Ore. 250; *Greenleaf v. Illinois Rld. Co.,* 29 Iowa 36; *Railroad Co. v. Stout,* 17 Wall. 657.

For some instructive cases, where the court held that certain acts by a plaintiff were held not to be in law contributory negligence, see *Borough of Shenandoah v. Erdman,* 119 Pa. St., 12 Atl. Rep. 97; *McRickard v. Flint,* 21 N. E. Rep. 153; *Brown v. Sullivan,* 71 Tex. 470, same case, 10 S. W. Rep. 288; *Cantwell v. Appleton,* 71 Wis. 591, same case, 37 N. W.

Rep. 815; 40 Kas. 578; 29 N. W. Rep. 902; *Kansas City v. Manning*, 50 Kas. 376, a case very much in point; *U. P. Rly. Co. v. Geary*, 52 Kas. 308; *Smith v. Railroad Co.*, 33 Pac. Rep. 626; *Railroad Co. v. Ives*, 144 U. S. 408; *Water Works Co. v. Dougherty*, 55 N. W. Rep. 1051.

It is the duty of the city to keep its streets and alleys in a safe condition for the traveling public. *Comm'rs of Shawnee Co. v. City of Topeka*, 39 Kas. 197–200; *Jansen v. City of Atchison*, 16 id. 358; *City of Topeka v. Sherwood*, 39 id. 690; Dill. Mun. Corp., § 1017; *Gould v. City of Topeka*, 32 Kas. 485.

The city cannot authorize a stairway on an alley. *Pettis v. Johnson*, 56 Ind. 148; Dill. Mun. Corp., § 660.

No person has a right to do anything which renders the streets hazardous by leaving an opening or cellar way in an alley, etc. Dill. Mun. Corp., § 1032; *Smith v. City of Leavenworth*, 15 Kas. 81.

A city is liable not only for accidents occasioned by negligently constructed sidewalks, but also for negligently allowing defects to continue. *City of Atchison v. King*, 9 Kas. 550. See, also, *Jansen v. City of Atchison*, 16 Kas. 358; *Gould v. City of Topeka*, 32 id. 485; *City of Lincoln v. Walker*, 18 Neb. 250; *Grant v. City of Stillwater*, 35 Minn. 242; 37 id. 503.

A person is not precluded from recovering for injuries through a defective street, although he is returning from a bawdyhouse. *Mc Voy v. City of Knoxville*, 1 S. W. Rep. 498.

The existence of a dangerous hole for several days or months is sufficient notice to the city of its dangerous condition. *City of Salina v. Trosper*, 27 Kas. 544; *Schroth v. City of Prescott*, 68 Wis. 678.

The fact that a person attempts to travel a street or sidewalk after he had noticed it was unsafe or out of repair is not necessarily negligence. 27 Kas. 673.

The whole alley is a street, and the law imposes the duty upon the city of keeping all portions of it free from such excavations as may occasion injury to life or limb. Beach,

Cont. Neg., § 76; *Street v. Holyoke,* 105 Mass. 105 ; *Durant v. Palmer,* 39 N. J. Law, 544; *Perkin v. Inhabitants of Fayette,* 68 Me. 152. See, also, *Osage City v. Larkin,* 40 Kas. 206; *City of Kinsley v. Morse,* 40 id. 577; *Collins v. Dodge,* 37 Minn. 503; *Whitfield v. City of Meridian,* 6 S. Rep. 244. The case of *Kansas City v. Manning,* 50 Kas. 373, is similar in some respects to the present case.

In the argument of the demurrer in the lower court, the case of *Fitzgerald v. City of Berlin,* 51 Wis. 81, same case, 7 N. W. Rep. 836, was relied upon. In that case the cellar way or hole was not in the street or highway, but was on private property adjacent to the highway. In this case the cellar way was wholly in the alley.

The case of *Alline v. City of Le Mars,* 71 Iowa, 654, same case, 33 N. W. Rep. 160, the lower court relied upon in deciding the demurrer. In that case the evidence shows that it was dark, but not so dark but that she, the plaintiff, could see. As two gentlemen were approaching, she stepped aside to let them pass, and in doing so she stepped into a hole that was close to the sidewalk. The court held plaintiff was guilty of contributory negligence. In the present case it was too dark to see. The motive which actuates a person in passing through or over a street or alley is immaterial so long as such person uses due care under the circumstances. *McVoy v. Knoxville,* 1 S. W. Rep. 498; *City of Emporia v. Schmidling,* 33 Kas. 485. See, also, *City of Altoona v. Lotz,* 114 Pa. St. 238, same case, 7 Atl. Rep. 240.

A person using a public highway is not bound to anticipate danger without some notice of the existence of things suggesting a peril to travel. *Turner v. Newburgh,* 109 N.Y. 301. A traveler upon a public highway without knowledge of defect in bridges forming part thereof, and himself exercising ordinary care, has a right to presume that such bridges are in a safe condition, and to act upon that presumption. *Howard Co. v. Legg,* 110 Ind. 479. One in passing along a sidewalk has a right to presume that the city has performed its duty in keeping the walk in a safe and proper condition, and he is

required to exercise only ordinary care in passing over the place where the accident occurred, unless he knew of its dangerous condition, or might have seen it by the exercise of the care ordinarily exercised by persons in walking along the sidewalks of a city. He is not required to anticipate danger, nor to be on the lookout for its existence. 18 Am. & Eng. Corp. Cas. 251. See, also, *Thomas v. Brooklyn,* 58 Iowa, 438; *Potter v. Castleton,* 53 Vt. 435; *Sleeper v. Lansdown,* 52 N. H. 244.

*Theodore Sternberg,* for defendant in error:

The existence of this open basement entrance in this alley is not *per se* negligence on the part of the city, (*City of Wellington v. Gregson,* 31 Kas. 102,) and the doctrine is fully established by numerous decisions of this court which it is not necessary to cite.

While it is ordinarily a question for a jury whether or not a claimed obstruction is near enough to the traveled way to make it dangerous for the ordinary and usual purpose of travel in the ordinary and usual way, yet there are cases, and this is one of them, where, there being no conflict in the evidence, and the facts being all admitted, that the court is called upon and should decide, as a matter of law, that this basement entrance did not render this alley unsafe for travel in the ordinary and usual way. Therefore, the city, having failed in no duty, is not liable in any way to those who for their own purposes unnecessarily depart from the safe and secure traveled path. See *Rice v. Montpelier,* 19 Vt. 470; *Hall v. Inhabitants of Unity,* 57 Me. 530; *Houfe v. Town of Fulton,* 29 Wis. 296; *Hawes v. Town of Fox Lake,* 33 id. 438.

Thompson, in his work on Negligence, (vol. 2, p. 767, note 7,) says, in speaking of a municipal corporation: "It must keep its highways in a reasonably safe condition for travel by night as well as by day; and a traveler proceeding, albeit in the nighttime, along a traveled road, has a right to presume that the traveled path is free from dangerous obstructions."

Same note, page 769: "If a traveler, without necessity, or for his own pleasure and convenience, deviates from the traveled track, it being in good condition, and in doing so meets with an accident from some cause outside of such track, the town will not be liable for the resulting damages."

The traveler has no right to presume that he can safely go anywhere outside of the traveled path; and if he wishes to go outside of the traveled path in the nighttime, he must carry his own lantern and take his own chances.  The plaintiff did not step into this alley because it was an alley, because she relied upon the duty of the city to keep an alley in a safe condition to use as an alley, but simply and solely because she thought that by stepping off the sidewalk she would the better escape observation.  If it had been a vacant lot, she would have stepped from the sidewalk just the same and for the same purpose.  The fact that she stepped into an alley was an incident, and not the cause of her being in it, at the time of her injury.  Plaintiff testified that, after getting into the alley, she moved backwards; that is, her face being to the west, she walked backwards, towards the building, which was east of her.  I submit that, as matter of law, plaintiff, being in an unfamiliar place in the nighttime, was bound to use all her senses when moving.

In *Beardsley v. City of Hartford*, 50 Conn. 530, the court says: "A city is not bound to maintain a railing in front of the numerous basement offices and shops that line its business streets."

In *Fitzgerald v. City of Berlin*, 51 Wis. 84, the court says: "The city was therefore guilty of no neglect of duty, unless the stairway was within the limits of the sidewalk, ordinarily used and traveled by the public, and the jury should have been so instructed."  See, also, 9 Am. & Eng. Encyc. of Law, p. 383, and notes; 31 Kas. 102, *supra*.

The case of *Osage City v. Larkin*, 40 Kas. 206, is cited by counsel.  It is not authority as to a liability of the city for an injury, in every case, under every circumstance, in any part of all the dedicated parts of a street or alley.  It is not open

to any such construction as plaintiff in error manifestly places on it; *i. e.*, as holding that the mere fact of plaintiff being on ground owned by the city imposes a liability on the city, and relieves her from the charge of contributory negligence, which would clearly exist from her own standpoint if the basement entrance had been on private ground. See *City of Wellington v. Gregson*, 31 Kas. 102, *Osage City v. Brown*, 27 id. 47, and the entire line of Kansas cases on the subject.

In *O'Laughlin v. City of Dubuque*, 42 Iowa, 541, the court says: "Sidewalks and crosswalks alone are constructed for foot travelers, and he who, without some good and sufficient reason, walks elsewhere and is injured should not be permitted to complain that he has been injured through the fault or negligence of the city." See, also, *McLaury v. City of McGregor*, 54 Iowa, 717; *Moore v. Westervelt*, 1 Bosw. 38; *Zettler v. City of Atlanta*, 66 Ga. 195; *City of Scranton v. Hill*, 102 Pa. St. 378; *Fisher v. Cambridge*, 57 Hun, 296; *Harwood v. Inhabitants of Oakham*, 125 Mass. 421, 425; *Biggs v. Huntington*, 32 W. Va. 55; *Ozier v. Town of Hinesburg*, 44 Vt. 220; *Goeltz v. Town of Ashland*, 75 Wis. 642; *Railroad Co. v. Loftin*, 86 Ga. 40; *Sykes v. Town of Pawlet*, 43 Vt. 446; *Johnson v. Wilcox*, 135 Pa. St. 221; *Witham v. City of Portland*, 72 Me. 540; *Fitzgerald v. City of Berlin*, 51 Wis. 84; *Blodgett v. City of Boston*, 8 Allen (90 Mass.), 237.

*Alline v. City of Le Mars*, 71 Iowa, 654, is, as to the principle and the facts, on all fours with this case. See, also, *Schoenfield v. City Railway Co.*, 74 Wis. 433; *Runyon v. Railroad Co.*, 25 N. J. 556; *Railway Co. v. Boudron*, 92 Pa. St. 475; *City of Indianapolis v. Cook*, 99 Ind. 10; *Ringus v. City of Cohoes*, 77 N. Y. 86; *City of Emporia v. Schmidling*, 33 Kas. 489. *Macomber v. City of Taunton*, 100 Mass. 255, is absolutely on all fours with the case at bar in the principle involved, and quite similar in the facts.

The opinion of the court was delivered by

HORTON, C. J.: In this state, a city is liable for any injury to private individuals caused by the negligence of its officers

in not keeping its streets in a reasonably safe and proper condition, and a city has no more right to create or permit an unsafe and dangerous condition of one of its streets than it has to create or permit a public or common nuisance. (*Smith v. City of Leavenworth,* 15 Kas. 81; *City of Eudora v. Miller,* 30 id. 494; *Gould v. City of Topeka,* 32 id. 485, and cases cited.)

The dedication of an alley, in this state, has the same force and is in the same terms as the dedication of a street. The fee is in the public, not in the lot owner.

"Public money may be expended by a city upon alleys to improve them, and they can be used by the public generally. The abutting lot owners have no such control over them as to exclude the general public from their enjoyment, and an injury happening in an alley used for public travel, occasioned by an obstruction therein, may make the city liable for the injury so sustained." (*Osage City v. Larkin,* 40 Kas. 206.)

A city is bound to keep its streets in a reasonably safe condition for persons to pass thereon in safety by night as well as by day. In one case it might require more vigilance on the part of a person traveling upon a street or alley in the nighttime than it would in the daytime; but after all the care required would simply be ordinary care under the circumstances surrounding that particular case, and nothing more. (*Corlett v. City of Leavenworth,* 27 Kas. 673; *Osage City v. Brown,* 27 id. 74; *City of Emporia v. Schmidling,* 33 id. 485; *City of Kinsley v. Morse,* 40 id. 577; 2 Thomp. Neg. 767, note 7; *City of Lincoln v. Walker,* 18 Neb. 244.)

This court has ruled "that the *onus probandi,* as to the negligence of the plaintiff, is on the defendant; that if the record shows negligence on the part of the defendant, and is silent as to the conduct of the plaintiff, it makes out a case for recovery." (*U. P. Rly. Co. v. Rollins,* 5 Kas. 167; *Sawyer v. Sauer,* 10 id. 466; *Railway Co. v. Pointer,* 14 id. 37.)

It appears from the testimony that the cellar way or opening which Mrs. Fletcher fell into is 17 feet and 5 inches in length, and 9 feet and 6 inches deep; that it is on the west

side of the Masonic temple in Ellsworth, *and is all located on and in the alley, not on private property.* It has no railing or guards around it. When Mrs. Fletcher was injured, on the 9th of November, 1888, the night was dark. She could not and did not see the cellar way or opening. The law holds no one responsible for exposing himself to a danger of which he knows nothing, and of which he is under no obligation to inform himself. Of course, every one must use ordinary care to avoid the ordinary and usual perils that beset us, but no one is bound to guard against that which he has no reason, under the circumstances, to suspect. Mrs. Fletcher had no knowledge of the probable danger, or a sufficient reason to apprehend it, when she fell. (*Kansas City v. Manning,* 50 Kas. 373; *City of Abilene v. Cowperthwait,* 52 id. 324.)

Before a demurrer can be sustained to evidence, the court must be able to say that the plaintiff has entirely failed to prove a case. (*Brown v. Railroad Co.,* 31 Kas. 1; *Gardner v. King,* 37 id. 671. In *Christie v. Barnes,* 33 Kas. 317, it was ruled that "a demurrer to evidence admits every fact and conclusion which the evidence most favorable to the other party tends to prove;" and in *Wolf v. Washer,* 32 Kas. 533, it was held that, "upon a demurrer to evidence, the court cannot weigh conflicting evidence, but must consider as true every portion of the evidence tending to prove the case of the party resisting the demurrer." Considering all of the evidence introduced, we think there was sufficient for the consideration of the jury, and that the trial court erred in disposing of the case as it did. (*City of Lincoln v. Walker,* supra; *Osage City v. Brown,* supra; *Osage City v. Larkin,* supra; *Kansas City v. Manning,* supra; *Pettis v. Johnson,* 54 Ind. 139; *City of Abilene v. Cowperthwait,* supra.)

2. Evidence— contributory negligence— jury.

In support of the judgment, it is said that the city kept a sufficient space in the alley in a reasonably safe condition for people to use in the usual way of travel; that Mrs. Fletcher, without any good reason, went outside of the traveled path and stepped into the cellar way or opening carelessly; that

the cellar way or opening into which she fell was a base-
ment entrance, and that the city was not bound
to maintain any railing around or in front of it.
Whatever may be the rule permitting a part only
of a street or alley to be improved for public travel, yet an
injury happening in a street or alley, open for public travel,
occasioned by an obstruction or excavation, may make the
city liable. (*Osage City v. Larkin,* supra.)

1. City—cellar
way in alley—
bodily injury
—liability.

Mrs. Lincoln was in the line of her duty when she went out
of the temple and down the alley to empty the pail which she
carried.   As Mrs. Lincoln did not like to go alone in the
dark, she asked Mrs. Fletcher, who was assisting her, to ac-
company her.   When Mrs. Fletcher heard footsteps coming
along the sidewalk toward her, we cannot say, as a matter of
law, that she was guilty of negligence in stepping into the
alley, and then stepping back to wait for Mrs. Lincoln.   It
is possible that her injuries were more severe in stepping into
the cellar way in the manner she did than if she were walk-
ing forward.   If her face had been toward the cellar way, she
might have protected herself somewhat with her hands.   Her
conduct in stepping from the sidewalk into the alley, and then
moving carefully back a few steps, is for a jury to pass upon.
Generally, a stairway or cellar way leading into a basement
under a building is upon the lot or private ground, not a
part of the alley or street, surely not wholly in the alley or
street.   Even when it opens on a street or alley, only a nar-
row entrance to the basement is generally used, and this
should be protected by side railings, but, in this case, all of
the cellar way was open.   Over 17 feet in length were located
in a public alley, not upon any lot or private ground, and
without railing or guard of any kind.   We can find no au-
thority which justifies a city in devoting a large part of a
street or alley to private purposes, to the injury of the travel-
ing public.   Upon a street or alley the rights of the public
are paramount.

Our attention is called by the counsel of the city to *Beards-
ley v. City of Hartford,* 59 Conn. 529; *Fitzgerald v. City of*

*Berlin,* 51 Wis. 81; *Alline v. City of Le Mars,* 71 Iowa, 654; *Zettler v. City of Atlanta,* 66 Ga. 195, and similar cases. So far as the Beardsley case is concerned, it may be observed that in Connecticut municipal corporations are liable only by force of the statute. In that case, the open space in front of the hotel was upon private property — not in an alley or street. The court remarked:

"The city had no power to erect a railing that should simply fence in, in front and on the sides, this basement stairway. It would have had to go upon private ground to do this, and that it had no power to do."

In the Fitzgerald case, it is not clear that the stairway was within the limits of the sidewalk. The court said:

"Structures of this character, which do not encroach upon the sidewalk, are lawful. The existence of such a structure, however, imposes upon the municipality in which it is situated the duty of providing proper safeguards to prevent the happening of accidents, by reason of its proximity to the sidewalk, to persons traveling thereon with ordinary care."

In the Alline case, it was not so dark but that the plaintiff could see; but that decision, unless founded upon the opportunity of plaintiff to avoid stepping into the hole, is not satisfactory to us, considering what is said in the case of *Kansas City v. Manning,* 50 Kas. 373. In the Zettler case, the plaintiff voluntarily left the sidewalk, and fell into an excavation on a vacant lot. She was not injured on an alley or a street; but the court in that case remarked: "Had this excavation been near enough to the sidewalk for accidental deviation or an unintentional misstep to have caused the injury, then the case would have been such as to make the corporation liable."

The judgment will be reversed, with direction to overrule the demurrer, and for further proceedings in accordance with the views herein expressed.

All the Justices concurring.